# THE UNITED OF DELAWARE BANKRUPTCY COURT

Submitted To:

2024 SEP 20 AM 9:25

FOXTROT VENTURES, INCORPORATED
CASE Number: #24-11018-TMH
EIN Number: 46-2928250

UNA O BOYLE
CLERK OF COURT
CHAPTER 7
District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

And,

Dennis A. Meloro
And,
Greenberg Traurig, PA
222 Delaware Avenue Suite 1600
Wilmington, DE 19801

## I. THE COMPLAINT:

1. Plaintiff **Antonio Martinez** brings this enforcement action against FOXTROT INC, a delivery service company/retail store, for violations of the District's Minimum Wage Revision Act ("MWRA"), D.C. Code § 32-1001, et seq., Wage Payment and Collection Law ("WPCL"), D.C. Code § 32-1301, et seq., Sick and Safe Leave Act, D.C. Code § 32-531.01, et seq., Universal Paid Leave Act ("UPLA"), D.C. Code § 32-531.01, et seq., and Workers' Compensation Act ("WCA"), D.C. Code § 32-1501, et seg. In support of its claims, the District states as follows:

2. Code of the District of Columbia § 32–1331.04. Workplace fraud prohibited. (a) An employer shall not improperly classify an individual who performs services for remuneration paid by an employer as an independent contractor.

# THE UNITED OF DELAWARE BANKRUPTCY COURT

(b) An employer has improperly classified an individual when an employer-employee relationship exists, as determined by subsection (c) of this section, but the employer has not classified the individual as an employee.

(c) An employer-employee relationship shall be presumed to exist when work is performed by an individual for remuneration paid by an employer, unless to the satisfaction of the Mayor, the employer demonstrates that:

(1) The individual is an exempt person; or

(2)(A) The individual who performs the work is free from control and direction over the performance of services, subject only to the right of the person or entity for whom services are provided to specify the desired result;

(B) The individual is customarily engaged in an independently established trade, occupation, profession, or business; and

(C) The work is outside of the usual course of business of the employer for whom the work is performed

3. Foxtrots Business Model Relies on Misclassifying Delivery personnel as Independent Contractors.
4. Through misclassification FOXTROT reduces its labor costs by denying workers the rights to which they would otherwise be entitled as employees under District law, such as minimum wage (currently $16.10/hour) for al compensable work time, overtime pay of at least 1.5 times their regular rate for hours worked over 40 hours in any workweek, and paid sick leave. See D.C. Code § 32-1003(a)(6) (minimum wage), 32-1003(c) (overtime), 32-531.02 (paid sick leave).
5. The economic reality of Foxtrot's relationship with its delivery personnel demonstrates the existence of an employer-employee relationship. Foxtrot has the power to hire and fire Delivery Personnel, exercises extensive supervision and control over their conditions of employment, and unilaterally determines their rate of pay. Delivery Personnel are also trained and monitored by FOXTROT, are economically dependent on FOXTROT, and perform work that is integral to FOXTROT business.
6. However, FOXTROT has chosen to misclassify its entire Delivery Personnel workforce as independent contractors. Through this unlawful scheme, FOXTROT reduced its labor costs by evading basic employment requirements for its core workers. Through misclassification, FOXTROT denies Delivery Personnel their rights to minimum wage, overtime pay, and paid sick

leave. And FOXTROT evades its obligations to pay what it owes to District programs, including paid family leave and workers' compensation

### A. Control and Supervision.

7. FOXTROT controls Delivery Personnel through the way it assigns orders in its mobile app. The only way for Delivery Personnel to perform any work for FOXTROT is through the FOXTROT ONFLEET app, which Delivery Personnel can only use as determined by FOXTROT.
8. FOXTROT prioritizes offering delivery orders to DELIVERY PERSONAL as always to physical control delivery personal, to punish Delivery personnel, to ensure delivery personnel will not reject orders, to ensure the delivery personnel never knew the pay for each delivery performed, to ensure the delivery personnel would stay close to the store location;
9. FOXTROT gave the delivery order and demanded the Delivery Personal to come to the store and to perform packing duties.
10. FOXTROT monitors when Delivery Personnel decline or take an order and can penalize them for doing SO.
11. Through its app, FOXTROT also controls what information Delivery Personnel receive about their orders, and when. For example, FOXTROT provided no information concerning how much delivery Job where being paid before accepting the order or after.
12. Foxtrot falsified pay records concerning delivery orders that received no tips.
13. FOXTROT controlled employee's' day-to-day work by establishing mandatory performance standards and utilizing the ONFLEET app to fetter control of Delivery Personnel, monitoring Delivery Personnel' compliance with those systems, and disciplining them when they fail to meet the standards. (For example refusing to send orders if you are not at the store, and calling, texting and harassing you.
14. FOXTROT surveys Delivery Personnel and exercises pervasive control over Delivery Personnel' work. Through its app, FOXTROT monitors Delivery Personnel location and speed so that FOXTROT can determine when Delivery Personnel have deviated from FOXTROT protocols on timeliness. The OnFleet app also compiles detailed metrics about on-the-job performance, including, for example, the timeliness of Delivery Personnel deliveries.
15. FOXTROT strictly controls what products customers can purchase through their website, and Delivery Personnel may not shop for or deliver any products except those purchased through FOXTROT. Because FOXTROT prohibits the sale of items like movie tickets through its app and website, Delivery Personnel are prohibited from shopping for those items or delivering them to customers.
16. DELIVERY PERSONAL are economically dependent on FOXTROT and lack individual opportunity for profit and loss. FOXTROT determines how many orders are available and the earnings opportunity for each. FOXTROT does not allow Delivery Personnel to identify preferred

customers for repeat service, and FOXTROT likewise does not allow customers to directly select their Delivery Personnel for a given order.

17. Put simply, FOXTROT CONSPIRED to create a delivery system that would fraud the government and its Delivery Personal while performing false 30 minutes or less delivery advertising techniques.

## B. FOXTROT Violations of District Wage-and-Hour Law

18. Through worker misclassification, FOXTROT systemically fails to pay District delivery personnel wages to which they are entitled as employees under the District's wage-and-hour laws.
19. Critically, FOXTROT repeatedly pays District Delivery Personnel hourly wages that fall short of the required minimum wage, which is presently $16.20/hour. (All tips should go to the delivery driver and not be counted as the employees hourly wage, due to fraud)
20. FOXTROT does not pay overtime rates for Delivery Personnel when they work hours in excess of 40 hours per week.
21. FOXTROT does not pay Delivery Personnel one additional hour at the minimum wage whenever Delivery Personnel work a split shift.
22. FOXTROT does not provide Delivery Personnel with any paid sick or safe leave.
23. FOXTROT also shifts expenses related to its business onto District workers without compensation. (For instance, FOXTROT dId not pay for Delivery Personnel' travel expenses, such as the price of gas, incurred in performing deliveries for FOXTROT.)
24. FOXTROT also does not pay for tools used by delivery personnel that are necessary to performing deliveries for FOXTROT, such as a vehicle, auto insurance, a smartphone, and broadband services

## C. FOXTROTS Noncompliance with Public Benefits Program Requirements

25. The District maintains multiple public benefits programs that are funded by employer contributions.
26. The District's Universal Paid Family Leave program ("PFL") is governed by the UPLA and provides monetary benefits to workers who take leave to care for a newborn, other family member, or their own serious medical condition. PFL benefits are also funded by employer contributions paid on a quarterly basis and likewise calculated as a percentage of the wages paid by the employer to its employees.
27. FOXTROT does not pay UPLA contributions as ot wages paid to Delivery Personnel.
28. In addition, the WCA establishes the District's workers compensation program. Workers' compensation is a form of no-fault insurance, where workers are assured financial compensation for injuries suffered on the job.

# THE UNITED OF DELAWARE BANKRUPTCY COURT

29. Workers' compensation programs, which today are the norm across all 50 states, emerged in the late 19th century and are frequently referred to as a "grand bargain" between employers and employees. This bargain reflected a system where workers gave up their right to sue their employers in court for personal injury and, in exchange, received more certain (but less generous) financial compensation for workplace injuries.

30. Delivery work is dangerous. FOXTROT requires its Delivery Personnel to navigate busy urban: environments while under stringent time constraints, and as a result, accidents and injuries are common. A Recent report issued by the United States Bureau of Labor Statistics concluded that gig workers "face unique challenges in terms of workplace safety" and are "potentially [are] put[] at greater risk for poorer workplace safety and health outcomes."

31. The WCA requires employers to secure the payment of workers' compensation, which can be done by purchasing a workers' compensation insurance policy that administers workers' compensation claims.

32. FOXTROT does not maintain workers' compensation insurance coverage as to its delivery personnel and fails to provide them with workers' compensation for injuries suffered on the job.

## II. COUNT I: FAILURE TO PAY WAGES DUE VIOLATION OF THE WAGE PAYMENT AND COLLECTION LAW

33. Antonio Martinez re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

34. The WPCL requires that employers "shall pay all wages earned to his or her • employees on regular paydays." D.C. Code § 32-1302.

35. FOXTROT is an "employer" that employs its DELIVERY SUBCONTRACTORS as "employees" as defined by the WPCL. D.C. Code §32-1301(1B)-(2).

36. FOXTROT violated and continues to violate the WPCL by failing to pay Delivery Personnel minimum wage, overtime, and paid sick leave required by District law.

37. FOXTROT also violated and continues to violate the WPCL by failing to pay Delivery Personnel for business expenses that were to benefit and were borne by Delivery Personnel, including travel expenses (such as gas and auto insurance) and tool expenses (such as smartphones and broadband services).

38. Minimum wage, overtime, paid sick leave, and business expenses are "wages" as defined by the WCL because they are "remuneration promised or owed ... [pursuant to District or federal law." D.C. Code § 32-1301(3)(E)(iii).

39. 7 DCMR § 909.1 requires that an "employer shall pay the cost of travel expenses incurred by the employee in performance of the business of the employer."

40. 7 DCMR § 910.1 requires that an "employer shall pay the cost of purchasing and maintaining any tools required of the employee in the performance of the business of the employer."

# THE UNITED OF DELAWARE BANKRUPTCY COURT

### III. COUNT II: FAILURE TO PROVIDE PAID SICK LEAVE VIOLATION OF THE SICK AND SAFE LEAVE ACT

41. The Delivery Personnel re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.
42. The SSLA requires employers to provide employees with paid sick leave, which is accrued based upon hours worked at a rate that depends on the employer's total number of employees. D.C. Code § 32-531.02.
43. FOXTROT is an "employer" that employs its Delivery Personnel as "employees" as defined by the SSLA. D.C. Code § 32-531.01(2)-(3).
44. FOXTROT violated and continues to violate the SSLA by failing to provide Delivery Personnel with any accrued paid sick leave.

### IV. COUNT III: FAILURE TO PAY OVERTIME VIOLATION OF THE MINIMUM WAGE REVISION ACT

45. The Delivery Personnel re-alleges the foregoing paragraphs of this Complaint as fi fully set forth herein.
46. The MWRA requires employers to pay employees overtime wage rates of at least 1.5 times the employee's regular rate for hours worked in excess of 40 hours per week. D.C. Code§ 32-1003 (c).
47. FOXTROT is an "employer" that employs its Delivery Personnel as "employees" as defined by the MWRA. D.C. Code §32-1002(1A), (2), (3).
48. FOXTROT violated and continues to violate the MWRA by failing to pay overtime rates to Delivery Personnel who worked hours in excess of 40 hours per week in violation of the MWRA.

### V. COUNT IV: FAILURE TO PAY MINIMUM WAGE VIOLATION OF THE MINIMUM WAGE REVISION ACT

49. The Delivery Personnel re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.
50. The MWRA requires employers to pay employees a set minimum wage, which is presently $16.10/hour and increases on an annual basis. D.C. Code § 32-1003 (a).
51. FOXTROT is an "employer" that employed its Delivery Personnel as "employees" as defined by the MWRA. D.C. Code § 32-1002(1A), (2), (3).
52. FOXTROT violated and continues to violate the MWRA by failing to pay Delivery Personnel minimum wage for all hours worked. Delivery Personnel were and continue to be paid sub-minimum hourly wages, which are further depressed after factoring in unpaid time spent training and being engaged to wait for FOXTROT's benefit.

# THE UNITED OF DELAWARE BANKRUPTCY COURT

**VI. DAMAGES REQUESTED:**

53. § 32–1304. Unconditional payment of wages conceded to be due. In case of a bona fide dispute concerning the amount of wages due, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the time required by §§ 32-1302 and 32-1303; provided, however, that acceptance by the employee of any payment made hereunder shall not constitute a release as to the balance of his claim. The employee or Mayor shall be able to pursue any such balance of unpaid wages and related damages, interest, costs, and penalties.

54. WAGES DUE: The Total Agreed Hourly rate Amount Offered should be Honored by the minus of 56-61 from the hourly payment. (For example: If the employee was getting paid 17.00 dollars per hour then you must minus the company's expense 56-62 from the 17.00 per hour rate; to provide the Actual hourly payment the company was providing the employee, due to the fraud)
55. Vehicle,
56. Auto insurance,
57. A smartphone, and
58. Broadband services
59. Delivery Bags
60. Travel
61. Tips
62. Overtime
63. Paid sick leave
64. and business expenses are "wages"
65. For The payment of any back wages unlawfully withheld; Statutory penalties; and Such legal or equitable relief as may be appropriate, and other in-junctive relief. 1) Every employer subject to any provision of this subchapter or of any regulation or order issued under this subchapter shall make, keep, and preserve for a period of not less than 3 years or the prevailing federal standard at the time the record is created, which shall be identified in rules issued pursuant to this chapter, which-ever is greater, a record of:
66. This settlement requested is below the actual amount Owed: o Code of the District of Columbia § 32–1303. Payment of wages upon discharge or resignation of employee and upon suspension of work; employer's liability for failure to make such payment: (4) If an employer fails to pay an employee wages earned as required under paragraphs (1), (2), and (3) of this section, such employer shall pay, or be additionally liable to, the employee, as liquidated damages, 10 per centum of the unpaid wages for each working day during which such failure shall continue after

# THE UNITED OF DELAWARE BANKRUPTCY COURT

the day upon which payment is hereunder required, **or an amount equal to treble the unpaid wages**, whichever is smaller

## VII. CONCLUSION

67. FOXTROT NOR ANY OTHER CONTRACT AGREEMENT CAN PROFIT OFF OF ILLEGAL FRAUDULENT ACTS AGAINST THE EMPLOYEES.
68. Antonio Martinez is requesting, respectfully demanding 22,000 dollars to settle these claims or any other claims in the future concerning employment up to the closure of FOXTROT.
69. IF paid ASAP within 30 days or the day a Judge allows.
70. **Please provide a response within two weeks.**
71. I believe the evidence shows beyond a reasonable doubt that the bankruptcy is also an attempt to cover up a crime against the DC Government and the Delivery Personnel to avoid criminal prosecution.
72. Misclassifying employees, wage theft, can be a crime. Depending on the severity of the misclassification, employers can face criminal and civil penalties, fines, and even imprisonment.

This Claim is a Response to Official Form 309 which is used to give notice to creditors, equity security holders, and other interested parties of the filing of the bankruptcy case

**Respectful Submitted,**

*[signature]*

**Antonio Martinez**
**September 17th, 2024**


**Certified Mail Sent, September 17th, 2024**
To: 222 Delaware Avenue Suite 1600
Wilmington, DE 19801
**Tracking Number: 9589 0710 5270 2032 5482 43**


**Certified Mail Sent, September 17th, 2024**
To: UNA O BOYLE CLERK OF COURT
CHAPTER 7 District of Delaware 824 Market Street, 3rd Floor
Wilmington , DE 19801
**Tracking Number: 9589 0710 5270 2032 5482 36**

Antonio Martinez
1710 15th St. N.W.
Washington, D.C. 20009

Una O Doyle
Clerk of Court Chapter 7
District of Delaware
824 Market St. 3rd floor
Wilmington, DE 19801





Retail

U.S. POSTAGE PAID
FCM LETTER
WASHINGTON, DC 20009
SEP 17, 2024
$4.91
S2324H503664-45

19801
RDC 99

CERTIFIED MAIL

9589 0710 5270 2032 5480 52    1980183024 C012